## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD PREIS, et al.,** | ) |
| Plaintiffs, | ) |
| v. | ) CIVIL ACTION 06-0360-WS-C |
| **LEXINGTON INSURANCE COMPANY, et al.,** | ) |
| Defendants. | ) |

### ORDER

This matter is before the Court on the motion for summary judgment filed by defendants T & B, Ltd. ("T&B") and Allen Ladd. (Doc. 110). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 111-12, 135-37, 146), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant materials in the file, the Court concludes that the motion is due to be granted.

### BACKGROUND

The plaintiffs' home on Mobile Bay was damaged during Hurricane Katrina in August 2005, while insured under a homeowner's policy ("the Policy") issued by defendant Lexington Insurance Company ("Lexington"). T&B is the firm through which the Policy was procured, and Ladd is the broker with T&B with whom the plaintiffs dealt. The plaintiffs recovered under two flood policies issued by other entities and now seek additional coverage from Lexington. As discussed in the Court's order addressing Lexington's motion for summary judgment, the Policy does not provide coverage for losses caused by flood.

The lawsuit was filed in March 2006. (Doc. 3). The current, amended complaint

asserts the following claims against T&B and Ladd:

- Count Four: Fraudulent misrepresentation
- Count Five: Fraudulent suppression
- Count Six: Negligence/wantonness

(Doc. 60 at 16-19).

## DETERMINATIONS OF UNCONTROVERTED FACT

Ladd holds a non-resident license from the Louisiana insurance department. (Doc. 24, Ladd Declaration).

In its August 2004 letter to the plaintiffs enclosing the renewal terms and conditions for their review and acceptance, T&B explicitly stated, as a separate paragraph on the first page of the brief correspondence, "**Please be aware that flood, rising water, wave or tidal action is not covered under your Lexington Homeowner policy**." (Doc. 111, Exhibit 7) (emphasis in original). Two weeks later, T&B mailed the renewal policy to the plaintiffs with a one-page cover letter again stating in a separate paragraph, **"Please remember that this policy does not include Flood Insurance coverage**." (*Id*., Exhibit 8) (emphasis in original). Similar warnings were included in similar mailings in connection with renewal every year, beginning in August 1997. (*Id*., Exhibits 3-6, 11-17).

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact

that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).

Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions.[1] Similarly, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, the Court's review of the parties' evidentiary submissions is limited to the portions to which they have specifically cited. The Court's review is similarly limited to those legal arguments expressly advanced by the parties.

The parties agree that Louisiana's choice-of-law rules apply (because suit was filed there) and that those rules dictate that Louisiana law governs the timeliness of the plaintiffs' claims against T&B and Ladd. (Doc. 112 at 6-9; Doc. 135 at 12, 24).

---

[1] *E.g., Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996) ("Rule 56 ... does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition."); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact."); *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1139 (7th Cir. 1984) ("The judge was not obliged to comb the record for evidence contradicting the defendant's affidavit"); *Karlozian v. Clovis Unified School District*, 2001 WL 488880 at *1 (9th Cir. 2001) ("While pretext evidence may have been buried in [the plaintiff's] 242 page deposition, a district court is not "required to comb the record to find some reason to deny a motion for summary judgment.") (internal quotes omitted); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."); *see also* Local Rule 7.2.

Louisiana provides a special peremptive period for actions against insurance agents, which reads in pertinent part as follows:

> A.  No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered.  However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
> ...
> C.  The peremptive period provided in subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

La. Rev. Stat. §  5606.

It is uncontroverted that Ladd holds an insurance license from the state of Louisiana.  (Doc. 24).  Even though T&B apparently holds no such license, "[b]ecause the acts of an insurance agent are generally imputable to the insurer he represents, we conclude La. R.S. 9:5606's peremptive periods apply to the claims against [the insurer]." *Klein v. American Life & Casualty Co.*, 858 So. 2d 527, 531 (La. Ct. App. 1st Cir. 2003); *accord Kobeszko v. State Farm Fire & Casualty Co.*, 2007 WL 1486315 at *1 (E.D. La. 2007).  The plaintiffs have identified no misconduct of T&B other than that of Ladd, its agent.  Accordingly, Section 5606 applies equally to both defendants.

The plaintiffs' claims against T&B and Ladd are for damages, (Doc. 60 at 16-19), and they arise out of an engagement to provide insurance services.  On its face, Section 5606 applies to all such claims, regardless of how they are cast, and the plaintiffs' claims of misrepresentation, suppression, negligence and wantonness (including negligent and/or wanton breach of fiduciary duty) fall within the statute.  *E.g., Klein*, 858 So. 2d at 530, 531 (Section 5606 applies to claims of negligence and breach of fiduciary duty).  The exclusion of fraud cases provided in subsection C addresses only the three-year period;

fraud claims are subject to the one-year period.  *Huffman v. Goodman*, 784 So. 2d 718, 727 (La. Ct. App. 2nd Cir. 2001).[2]  The plaintiffs do not contest any of these points.  The issue thus becomes whether they timely filed suit under this section.

It is first necessary to identify the scope of the claims at issue in this action.  With respect to the plaintiffs' claims of misrepresentation and suppression, the amended complaint alleges but one: that Ladd misrepresented that the Policy covered all damages caused by hurricane and suppressed that the Policy did not in fact do so.  (Doc. 60 at 16-17).  In brief, the plaintiffs assert additional misrepresentations and omissions.  (Doc. 135 at 15-16, 18-19, 22-24).  Because these allegations were not made in the amended complaint, they are not part of the lawsuit.  *E.g., Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir. 2006) ("[T]he discussion of a potential claim in a deposition does not satisfy the requirement of Rule 8(a)."); *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1568 (11th Cir. 1987) ("[T]he inclusion of claims in the pretrial stipulation, the mention of them in discovery and the filing of motions concerning those claims were not a substitute for the factual allegations of a complaint under Federal Rule of Civil Procedure 8(a).").

With respect to the plaintiffs' negligence/wantonness claim, the amended complaint alleges that T&B and Ladd: (1) failed to understand the terms and coverages of the Policy; (2) failed to disclose that a hurricane is an excluded peril; (3) failed to disclose that water damage primarily caused by wind or hurricane is excluded; (4) failed to

---

[2]Other intermediate courts have ruled that Subsection C exempts fraud claims from the one-year period.  *Shermohmad v. Ebrahimi*, 945 So. 2d 119, 121-22 (La. Ct. App. 5th Cir. 2006); *Klein*, 858 So. 2d at 531 n.4.  Neither provides reasoning for its conclusion.  In contrast, *Huffman* reviewed the history of the provision and explained why the legislature's usage of the singular "period" reflected that only the three-year period was addressed by subsection C.  *Cf. Granger v. Middleton*, 948 So. 2d 1272, 1275 (La. Ct. App. 3rd Cir. 2007) (employing the same reasoning to conclude that the substantively identical provision governing legal malpractice claims excludes fraud claims only from the three-year period, not the one-year period).  The Court accepts *Huffman* for two reasons.  First, it is persuaded that *Huffman* correctly interprets the statute.  Second, the plaintiffs have not challenged the defendants' reliance on *Huffman*.  (Doc. 112 at 10).

disclose that personal property losses relating to weather are excluded; (5) failed to disclose that Lexington took the positions identified in paragraphs (2) - (4); and (6) failed to contact Lexington to determine its position on these issues.  (Doc. 60 at 18-19, ¶¶ 54-55).  Their embedded claim for breach of fiduciary duty is limited to breach of duties "as aforesaid."  (*Id.*, ¶ 56).

In their brief, the plaintiffs make no mention of items (2) - (5), which are in any event only restatements of their suppression claim.  They articulate their challenge under items (1) and (6) as follows:  Ladd failed to place excess flood coverage, either because he didn't understand that the Policy didn't provide flood coverage, or because he did understand but nevertheless failed to secure appropriate coverage.  If he didn't understand that the Policy didn't provide flood coverage, it was because he didn't adequately review the Policy and didn't contact Lexington to find out, and he didn't do those things because he didn't understand that he had a duty to do so.  (Doc. 135 at 17-21).[3]

The peremptive period of Section 5606 is tied to the "alleged act, omission, or neglect."[4]  Based on the plaintiffs' allegations that are properly part of this lawsuit, the alleged acts, omissions and neglect consist of: (1) misrepresenting that the Policy covers

---

[3] The plaintiffs' assertion that T&B and Ladd failed to disclose their alleged agency relationship with Lexington, (*id.* at 18-19), even if intended as a claim of negligence/wantonness rather than the suppression claim they call it elsewhere, (*id.* at 16), lies outside the amended complaint and so is not part of this lawsuit.

[4] It does not, as the plaintiffs suggest (without citation to authority), begin to run only when the injured party "ha[s] a legal cause of action."  (Doc. 135 at 26).  On its face, the statute provides that the peremptive period begins to run when the wrongful conduct occurs, is discovered, or should be discovered, independent of whether the injured party has suffered damage.  Indeed, "peremption [on a legal malpractice claim under Section 5605] begins to run when a client knows or should have known of an act, omission, or negligence by their attorney even though the cause of action may not ripen into a justiciable claim until the client experiences some damages."  *Atlas Iron & Metal Co. v. Ashy*, 918 So. 2d 1205, 1213 (La. Ct. App. 3rd Cir. 2006).  The same principle applies to the substantively identical Section 5606.  *Commonwealth Land Title Co. v. Jones*, 948 So. 2d 1243, 1248-49 (La. Ct. App. 3rd Cir. 2007).

all hurricane damage; (2) suppressing that the Policy does not do so; and (3) negligently or wantonly failing to obtain excess flood coverage.[5]  T&B and Ladd argue that each of these occurred in 1995, when the plaintiffs obtained insurance coverage, and the plaintiffs concede that they occurred that year.  However, they argue that these acts, omissions and neglect recurred, most recently during the August 2004 renewal process.  (Doc. 135 at 2-3, 26-27).  They argue further that they "did not actually know about" the acts, omissions and neglect until Lexington denied their claim scant weeks before they filed suit.  (*Id*. at 26-27).

It is true that the Policy was renewed in August 2004 but, "[i]n order for each renewal to be the basis of a separate tort, the complained of conduct must consist of separate and distinct acts, each of which gives rise to immediately apparent damages." *Biggers v. Allstate Insurance Co.*, 886 So. 2d 1179, 1182 (La. Ct. App. 4th Cir. 2004); *accord Bel v. State Farm Mutual Automobile Insurance Co.*, 845 So. 2d 377, 382 (La. Ct. App. 1st Cir. 2003).  Otherwise, the renewals are "nothing more than a continuation of the ill effects of an original unlawful act."  *Id*.  As noted in an authority the plaintiffs encourage the Court to employ, (Doc. 135 at 29), "[t]he inquiry is whether the actions of the insurance agents at the time of renewal can be construed to constitute an act separate from the initial policy procurement."  *Fidelity Homestead Association v. Hanover Insurance Co.*, 458 F. Supp. 2d. 276, 280 (E.D. La. 2006).

The plaintiffs do not attempt to meet this standard.  They do not, for example, argue (or provide evidence) that Ladd, in August 2004, made an affirmative representation that the plaintiffs had full hurricane coverage, suppressed the fact that they did not, or elected not to obtain excess flood coverage.  On the contrary, the only communication they cite is the cover letter enclosing the renewal terms and conditions for

---

[5]While the plaintiffs characterize Ladd's alleged lack of understanding of his duties and the Policy as negligent, (Doc. 135 at 6, 16, 17), these matters merely explain why Ladd negligently failed to procure excess flood coverage; it is only that failure which is potentially actionable.

review and acceptance. (Doc. 135 at 11). That document on its face reflects that the only provisions subject to discussion were: the amount of other structures coverage; the amount of personal property coverage; the wind deductible; water back-up coverage; and the addition of coverage for loss of use. (Doc. 111, Exhibit 7). The plaintiffs expressly acknowledge the absence of any affirmative misrepresentation after November 1997. (Doc. 135 at 22).

Even had the plaintiffs demonstrated the existence of a jury issue as to new acts, omissions or neglect in August 2004, they did not file suit until March 2006, over 18 months later. Accepting for present purposes the plaintiffs' representation that they did not actually learn that they lacked full hurricane coverage until Lexington denied their claim shortly before they filed suit, the issue becomes whether they "should have ... discovered" the wrongful conduct before March 2005. The answer is plainly "yes."

In its August 2004 letter to the plaintiffs enclosing the renewal terms and conditions for their review and acceptance, T&B explicitly stated, as a separate paragraph on the first page of the brief correspondence, "**Please be aware that flood, rising water, wave or tidal action is not covered under your Lexington Homeowner policy**." (Doc. 111, Exhibit 7) (emphasis in original). Two weeks later, T&B mailed the renewal policy to the plaintiffs with a one-page cover letter again stating in a separate paragraph, **"Please remember that this policy does not include Flood Insurance coverage**." (*Id.*, Exhibit 8) (emphasis in original). Similar warnings were included in similar mailings in connection with renewal every year, beginning in August 1997 — a total of 14 such warnings. (*Id.*, Exhibits 3-6, 11-17). The plaintiffs have not acknowledged, much less controverted, any of this evidence.

The peremptive period begins "when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. ... Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or

notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription." *Roadhouse Bar-B-Que, Inc. v. Certain Underwriters*, 909 So. 2d 619, 623 (La. Ct. App. 3rd Cir. 2005). That is, the peremptive period does not begin to run only when the plaintiff has irrefutable evidence that he has been wronged; rather, it begins when he receives sufficient notice of a problem that a reasonable person would inquire further, if the resulting reasonable inquiry would disclose the wrongful conduct.

Here, the plaintiffs were on exceptionally clear notice that the Policy did not cover flood damage. That exclusion from coverage was patently in tension with the plaintiffs' alleged belief that the Policy covered flooding from a hurricane, and it would have caused a reasonable person to inquire of the defendants as to whether such flooding was covered. The plaintiffs do not suggest that T&B, Ladd or Lexington would not have confirmed that flooding from hurricanes was excluded, had they simply been asked. Thus, as a matter of law the peremptive period began to run in or before August 2004 and expired long before the plaintiffs filed suit.[6]

Because the plaintiffs' claims are time-barred, the Court pretermits discussion of the defendants' remaining arguments, several of which appear meritorious. For the reasons set forth above, the motion for summary judgment filed by T&B and Ladd is **granted**. All claims against these defendants are **dismissed with prejudice**.

---

[6]In limited circumstances, an insured may not have a duty to examine his policy. *See Louisiana Home Builders Association Self-Insurers' Fund v. Adjustco, Inc.*, 630 So. 2d 630, 635 (La. Ct. App. 1st Cir. 1993). The plaintiffs neither invoke this rule nor offer any evidence to establish its applicability. In any event, the rule would not aid them even if it applied, because the plaintiffs were placed on notice by cover letters, quite independent of the Policy provisions themselves. *See Roadhouse*, 909 So. 2d at 621, 624 (in a suit for failure to place adequate coverage, the plaintiff's failure to review the policy was irrelevant, because the cover letters accompanying the policy set forth the policy limits and thereby triggered the peremptive period).

DONE and ORDERED this 20th day of June, 2007.

                                                    s/ WILLIAM H. STEELE
                                                   UNITED STATES DISTRICT JUDGE