IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD PREIS, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | CIVIL ACTION 06-0360-WS-C |
| ) | |
| **LEXINGTON INSURANCE** ) | |
| **COMPANY, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This matter is before the Court on the plaintiffs' motion to re-tax costs against defendant Lexington Insurance Company ("Lexington"). (Doc. 229). The parties have filed briefs and/or evidentiary materials in support of their respective positions, (Docs. 230, 232), and the motion is ripe for resolution. After carefully considering the foregoing materials, the Court concludes that the motion is due to be granted in part and denied in part.

Lexington argues that no costs should be taxed because, shortly after suit was filed, it made an unconditional offer of $64,167.86, and the final jury award was $70,000, or less than $6,000 more than the plaintiffs could have recovered without a trial. (Doc. 232 at 3-4). Lexington does not argue that the plaintiffs were not prevailing parties, but it suggests that they did not prevail very much and so should be denied all costs. As prevailing parties, the plaintiffs are presumptively entitled to an award of costs, *Holton v. City of Thomasville School District*, 425 F.3d 1325, 1355 (11th Cir. 2005), and a denial of costs "is in the nature of a penalty for some defection on [the prevailing party's] part in the course of the litigation." *Chapman v. AI Transport*, 229 F.3d 1012, 1039 (11th Cir. 2000) (en banc). Lexington provides no authority for the proposition that a prevailing plaintiff's failure to accept a settlement offer justifies a denial of costs and, absent such

authority, the Court declines to penalize the plaintiffs.

**I.  Court Reporter Costs.**

The plaintiffs request $8,182.81 representing court reporter fees in connection with nine depositions taken in this case.  Court reporter fees for "stenographic transcripts" that were "necessarily obtained for use in the case" are properly taxable.  18 U.S.C. § 1920(2). "It is not necessary to use a deposition at trial for it to be taxable, but admission into evidence or use during cross-examination tends to show that it was necessarily obtained." *United States Equal Employment Opportunity Commission v. W&O, Inc.*, 213 F.3d 600, 621 (11th Cir. 2000).  "A district court may tax costs associated with the depositions submitted by the parties in support of their summary judgment motions."  *Id*. (internal quotes omitted).  "Taxation of deposition costs of witnesses on the losing party's witness list is reasonable because the listing of those witnesses indicated both that the [prevailing party] might need the deposition transcripts to cross-examine the witnesses, ... and that the information those people had on the subject matter of this suit was not so irrelevant or so unimportant that their depositions were outside the bound of discovery."  *Id*. (internal quotes omitted).  Such costs are not taxable if they were not "related to an issue which was present in the case at the time the deposition was taken."  *Id*. (internal quotes omitted).  A party may even recover the cost of his own deposition if it was reasonably necessary, such as to allow his counsel to confine impeachment to its proper limits.  *Id*. at 622.

Lexington offers a number of challenges to the plaintiffs' request.  First, it asserts that the plaintiffs seek costs associated with the deposition of Fred Helmstrom even though "he was never even deposed."  (Doc. 232 at 5).  The plaintiffs, however, have presented the invoice from the court reporter reflecting services rendered with respect to Helmstrom's deposition, which is in exactly the same form as the same court reporter's invoice from the following day concerning the depositions of Billy John Jones and Sandra

A. Carter.  Moreover, the invoice on Helmstrom is marked as paid by the plaintiffs or their counsel.  (Doc 230, Exhibit A at 11, 14).  It requires more than Lexington's unsworn ipse dixit in brief to refute this evidence.

Lexington next complains that Helmstrom and Jones were not designated as its Rule 30(b)(6) representatives.  (Doc. 232 at 4-5).  Perhaps so, but Lexington has not countered the plaintiffs' representation that they were identified by Lexington in its initial disclosures.  (Doc. 230 at 2-3).  Moreover, Lexington identified both individuals on its Rule 26(a)(3) list of trial witnesses.  (Doc. 160 at 2).  They thus constitute "witnesses on the losing party's witness list" for purposes of *W&O*.

Lexington argues that the plaintiffs' copy of the deposition of plaintiff Richard Preis should not be taxed because it "was never used during trial, either as impeachment or as a means to hold impeachment within proper limits."  (Doc. 232 at 6, 8-9).  Contrary to Lexington's suggestion, *W&O* does not require that a party's deposition be used at trial before it can be taxed.  On the contrary, the *W&O* Court quoted with approval a case taxing such costs because "it was 'reasonably necessary that plaintiffs' counsel should have a copy [of a plaintiff's deposition] in order to protect the plaintiffs' rights by holding the impeachment within proper limits.'"  213 F.3d at 622 (quoting *Hancock v. Albee*, 11 F.R.D. 139, 141 (D. Conn. 1951)).  The mere "possibility" of impeachment of his client by the deposition made it reasonably necessary for plaintiffs' counsel to obtain a copy.  *Hancock*, 11 F.R.D. at 141.

Lexington also points out that none of the depositions "was admitted into evidence at the trial of this matter" and that only four of them were used in opposition to Lexington's motion for summary judgment.  (Doc. 232 at 4-5).  As noted, however, "[i]t is not necessary to use a deposition at trial for it to be taxable ...."  *W&O*, 213 F.3d at 621.

Lexington next argues that the depositions of Carter, Jones, Allen Ladd, and John Moran should not be taxed because their testimony supported Lexington's successful motion for summary judgment on the plaintiffs' claims for bad faith and

misrepresentation, as well as on the plaintiffs' breach of contract claim to the extent based on Lexington's failure to pay for flood damage. As Lexington explains, "Plaintiffs were not the prevailing parties with regard to these issues [and] [e]quity dictates that Plaintiffs not be entitled to costs related to issues they lost." (Doc. 232 at 5, 8). Prevailing party status, however, is determined for the case as a whole, not issue by discrete issue. *E.g., Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995) ("A party who has obtained some relief usually will be regarded as the prevailing party even though he has not sustained all his claims ....") (internal quotes omitted). Thus, "[a] party need not prevail on all issues to justify a full award of costs ...." *Id.* (internal quotes omitted). Without more involved analysis than Lexington offers, the Court declines to reduce the plaintiffs' award because they did not prevail on all claims advanced.

Any portion of the cost of a deposition that was incurred "for the convenience of the attorney" rather than being "necessarily obtained for use in the case" is not properly taxable. *Newman v. A. E. Staley Manufacturing Co.*, 648 F.2d 330, 337 (5th Cir. 1981). Lexington argues that much of the plaintiffs' deposition costs must be disallowed under this principle. (Doc. 232 at 6-9).

Lexington's primary objection is to all aspects of the videotaped depositions of Jones, Moran, Carter, and Barry Fulford. According to Lexington, "[s]uch costs [are necessarily] incurred for the convenience of counsel." (Doc. 232 at 6). On the contrary, "we hold that, when a party notices a deposition to be recorded by nonstenographic means, or by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recordation pursuant to Federal Rule of Civil Procedure 26(c), it is appropriate under § 1920 to award the cost of conducting the deposition in the manner noticed." *Morrison v. Reichold Chemicals, Inc.*, 97 F.3d 460, 464-65 (11th Cir. 1996). Lexington concedes that Moran and Carter were its Rule 30(b)(6) representatives, (Doc. 232 at 4-5), and the record reflects that the depositions of Lexington and Jones were noticed as "videotape & stenographic." (Doc. 85). Because

there is no evidence that Lexington objected to this designation, under *Morrison* the cost of conducting the videotaped depositions is awardable.  Fulford was deposed on August 9, 2007, (Doc. 230, Exhibit A at 9), long after the discovery deadline expired and apparently pursuant to some side agreement by the parties.  Having permitted the video deposition to occur without objection, under *Morrison* Lexington cannot be heard to complain that its cost is taxed.

That the cost of videotaping the depositions is awardable does not mean that every cost charged in connection with the depositions is awardable.  Lexington objects to the $600 cost of converting certain videotapes to DVD and to the $116 cost of archiving the master tapes.  Because nothing in the record suggests the plaintiffs were not entitled to the master tapes, they cannot recover the cost of archiving them.  Because nothing in the record suggests that both a videotape and a DVD copy were necessary, the plaintiffs cannot recover the cost of the DVD conversions.  *See Cherry v. Champion International Corp.*, 186 F.3d 442, 449 (4th Cir. 1999) ("The concept of necessity for use in the case connotes something more than convenience or duplication to ensure alternative methods for presenting materials at trial.") (upholding trial court's refusal to allow both videotape and stenographic transcript as costs).

Lexington also objects to $116.05 charged for shipping five depositions to the plaintiffs.  "Costs associated with delivering, shipping, or handling transcripts are ordinary business expenses and are not recoverable." *Kerns v. Pro-Foam, Inc*., 2007 WL 2710372 at *3 (S.D. Ala. 2007) (internal quotes omitted).

Finally, Lexington objects to $20.00 charged for CD ROM with ASCII and e-tran of the Jones and Carter depositions.  As stated in the Court's order on the plaintiffs' motion to retax, such duplication is for the convenience of counsel and is not taxable. (Doc. 228 at 2).

In summary, the plaintiffs seek $8,182.81 in court reporter fees.  The Court disallows $852.05 of this request.  The taxable amount for court reporter fees, therefore,

is $7,330.76.

## II. Copying Costs.

"Fees for exemplification and copies of papers necessarily obtained for use in the case" are properly taxable. 28 U.S.C. § 1920(4).[1]  "[I]n evaluating copying costs, the court should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue." *W&O*, 213 F.3d at 623.  For example, the cost of copying documents produced by an adverse party may be awardable under this rule. *Id*. However, "[e]xtra copies or copies prepared for the convenience of counsel are not taxable ...." *Biomedical Disposal, Inc. v. Mediq/PRN Life Support Services, Inc*., 2007 WL 2593075 at *3 (N.D. Ga. 2007); *accord Bates v. Islamorada, Village of Islands*, 2007 WL 2113586 at *18 (S.D. Fla. 2007); *Pickett v. Tyson Fresh Meats, Inc*., 2004 WL 3712721 at *6 (M.D. Ala. 2004) (the first copy of opponent's trial exhibits was necessarily obtained, but the second and third copies were for the convenience of counsel and not taxable).  Moreover, costs of "general copying" are not recoverable. *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996).

The plaintiffs request $4,719.88 for "litigation copies used during the discovery and litigation phase of this case." (Doc. 230 at 4). This figure represents something in excess of 33,000 copies, (Doc. 230, Exhibit A at 18-34, 36), exclusive of the multiple copies of trial exhibits discussed below. The plaintiffs make no effort to demonstrate that this enormous number of copies — which would occupy approximately 11 linear feet — was necessarily obtained, other than its unhelpful description of the lawsuit as constituting "document intensive litigation." (Doc. 230 at 4). The Court finds this an inadequate explanation for the plaintiffs' request, especially given the Court's experience

---

[1]"Exemplification" is limited to "an official transcript of a public record, authenticated as a true copy for use as evidence," *Arcadian Fertilizer, L.P. v. MPW Industrial Services, Inc.*, 249 F.3d 1293, 1297 (11th Cir. 2001) (internal quotes omitted), and is not at issue.

of being showered by the plaintiffs with multiple, redundant hard copies of the same small universe of documents.  It is apparent that large amounts of copying were conducted for the convenience of counsel, and it is likely that some general copying occurred as well.  The uncertainty as to the degree of taxable copying raised by the plaintiffs' superficial presentation must be resolved against them, and the Court concludes that two-thirds of their requested copies are not taxable.[2]  The balance will be taxed at the rate of $0.10 per page, which is what counsel charged the plaintiffs after they complained about an extravagant charge of $0.50 per page.  (Doc. 230, Exhibit A at 24-25).  The awardable amount is thus $1,100.00.

The plaintiffs also request $1,301.29, representing half the cost of producing the multiple sets of exhibit books used at trial.  Lexington challenges neither the necessity of obtaining these copies nor the cost of doing so.  Instead, Lexington notes the parties' agreement to split the cost of the exhibit books (which included both sides' exhibits).  (Doc. 232 at 9-10).  Nothing in the parties' agreement, however, exempted the cost of the exhibit books from an award of costs.  *See, e.g., Rogriguez v. Ithal*, 2003 WL 22284202 at *4 (N.D. Ill. 2003) ("[T]his cost-sharing arrangement does not control Ithal's right as the prevailing party to recover costs if the [shared expense] was reasonably necessary to the litigation."); *Paul v. USIS Commercial Services, Inc*., 2007 WL 2727222 at *2 (D. Colo. 2007).

The term "[c]opies of paper" is limited to "reproductions involving paper in its various forms."  *Arcadian Fertilizer v. MPW Industrial Services*, 249 F.3d 1293, 1296 (11th Cir. 2001).  The cost of the exhibit books includes $832.50 in index tabs and binders, plus 9% tax of $74.92, for a total of $907.42.  (Doc. 230, Exhibit A at 37).  The

---

[2]The plaintiffs may consider themselves fortunate, since their failure of proof would justify a complete denial of their request for the cost of copying.  *E.g., Case v. Unified School District*, 157 F.3d 1243, 1258-59 (10th Cir. 1998) (upholding denial of copying costs because "[i]t was not the district court's burden to support the substantial weight of 71,194 copies or any lesser amount ....").

plaintiffs' share of this expense cannot be recouped, reducing their recovery by $453.71.

In summary, the plaintiffs seek $6,021.17 in copying costs. The Court disallows $4,073.59. The taxable amount for copying, therefore, is $1,947.58.

## III. Expert Witness Costs.

The plaintiffs seek to recover the entire amount they paid their expert witness in fees, including "formulation of his expert report, opinion and deposition time," as well as his time at trial. (Doc. 230 at 5). However, "when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of [28 U.S.C.] § 1821(b), absent contract or explicit statutory authority to the contrary." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987). The only explicit statutory authority to the contrary arises in the context of court-appointed experts. *Id.* at 442.

Section 1821(b) provides a daily attendance fee of $40. This fee applies to deposition time as well as trial. *Morrison v. Reichold Chemicals, Inc.*, 97 F.3d at 463. The plaintiffs' expert testified for part of one day at trial, and there is no evidence that his deposition consumed more than one day. Accordingly, Section 1821(b) limits the plaintiffs' recovery to $80.00.[3]

In summary, the plaintiffs seek $16,110.75 in expert witness costs. The Court disallows $16,030.75. The taxable amount for expert witnesses, therefore, is $80.00.

## IV. Conclusion.

For the reasons set forth above, the plaintiffs' motion to re-tax costs is **granted** with respect to those items identified above, in the total amount of $9,358.34. In all other

---

[3]Section 1821(c)(2) provides a travel allowance, but the plaintiffs have provided no basis for calculating such an amount. Section 1821(d) provides a subsistence allowance, but there is no evidence that the plaintiffs' expert, whose invoices reflect a Mobile address, was entitled to one.

respects, the motion to re-tax is **denied**.

DONE and ORDERED this 22nd day of October, 2007.

<u>s/ WILLIAM H. STEELE</u>
UNITED STATES DISTRICT JUDGE